UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SONNY DAVIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-01876-JRO-TAB |
| | ) | |
| WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT**

Sonny Davis's petition for a writ of habeas corpus seeks relief from his conviction and sanctions in prison disciplinary case CIC 25-06-2281. For the following reasons, his petition is **DENIED**, and this action is **DISMISSED with prejudice**.

## I. OVERVIEW

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass.*

*Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

**II. THE DISCIPLINARY PROCEEDING**

On June 12, 2025, Sgt. C. Ivins received information that another incarcerated individual, Charles Sells, placed food into the cell of Davis, who had been claiming he was on a hunger strike. Dkt. 12-1 (conduct report). Sgt. Ivins reviewed the security video and saw Sells throw food into Davis's cell and then take a broom to conceal it next to the inner wall by the toilet. *Id.* Sgt. Ivins saw on the video that when Davis was placed into the cell, Davis picked up the food and concealed it in his jumper. *Id.* Sgt. Ivins charged Davis with offense 113, trafficking. *Id.*

A screening officer screened Davis on July 2, informing him in writing of his rights. Dkt. 12-2. Davis pleaded not guilty and requested a witness statement: "Guy who brought food 'did you do this on your own?'" The screening officer denied the request, noting "Denied. Issue in question is if Davis accepted item." *Id.* Davis also requested "Documentation I had not eaten from 6/1/25 – 6/12/25," which the screening officer noted was "Denied. Not relevant." *Id.* Davis made a broad request for video evidence, including "Everything prior to him coming over here. Prior to being in cell following trays back from kitchen to show I was poisoned 5/31/25 IWO 2L Breakfast 6/1/25 IWO Breakfast 2L." *Id.* The screening officer responded: "Denied not relevant." *Id.*

The disciplinary hearing officer (DHO) reviewed video evidence, stating in a report:

> During the video review offender Sells #180347 can be seen throwing a sack on the toilet in cell 14-1ARH. Sells then takes the broom and knocks the food off beside the toilet. Davis is escorted back into his cell. Once Davis is inside the cell he can be seen laying on his bunk and talking into the heater vent. While Davis is inside his cell he can clearly be seen grabbing the food and putting it inside his jumpsuit.
>
> *Davis requested documentation that he has not eaten from 6/1/25 to 6/12/25. That request is denied as it is not relevant to the case in question.
>
> **Davis requested video "everything prior to him coming over here, prior to being in cell from kitchen to show I was poisoned on 5-31-25 and 6-1-25." This request is denied as it is not relevant to the incident in question.

Dkt. 12-4.

DHO Pardue conducted a hearing on July 16, 2025. Dkt. 12-3. Davis testified at the hearing: "I didn't ask him to give me anything. Didn't eat for 11 days. When I seen the food I ate it." *Id.* The DHO found Davis guilty of unauthorized possession of property, code 215, stating, "Davis was not allowed to possess the sack because it was not given to him by staff." *Id.* The DHO relied on the following evidence: Sgt. Ivins's report; Davis's statement; photos of sack and cell; and the video review. *Id.* The DHO sanctioned Davis with the loss of 90 days of earned credit time. *Id.*

Davis's appeals were denied. This habeas action followed.

## III. DISCUSSION

Davis's claims are: 1) the DHO was not impartial; 2) he was denied evidence; and 3) he was not given advance notice of the modification of the charge against him. Dkt. 2 at 2–3.

**A. Impartial Decisionmaker**

Davis argues that the DHO could not have been impartial because Davis had filed a grievance against him and about a month before the hearing, he filed a federal lawsuit against him, 1:25-cv-1215-JPH-TAB.

As noted above, inmates facing disciplinary charges have a due process right to be heard by an impartial decision-maker. Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at 666. Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667; *see Ealy v. Watson*, 109 F.4th 958, 965 (7th Cir. 2024) (holding an inmate had impartial decisionmakers where "none [ ] were involved in the investigation or initial disciplinary report."). Another possible example of bias is if the DHO were found to have an intimate relationship with a crucial witness in the case. *See Eads vs. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002).

Davis does not allege that the DHO was involved in the incident or the investigation thereof, nor that he had an inappropriate relationship with a witness. Although it is possible that DHO Pardue was aware of the grievance

before he conducted the hearing at issue in this case, there is no evidence that the grievance played any part in his decision-making.

In addition, the Court takes judicial notice that the lawsuit, *Davis v. Arnold et al.,* 1:25-cv-1215-JPH-TAB, was filed on June 18, 2025. Defendants were not made aware of the action until the complaint was screened and notices of the lawsuit were issued by the Court on January 7, 2026, long after the July 16, 2025, hearing.

Even if the DHO was aware that Davis filed a grievance, or lawsuit for that matter, that alone is not sufficient to prove bias. *See Wilson-El v. Finnan*, 263 F. App'x 503, 505 (7th Cir. 2008) (DHO was not biased simply because petitioner had filed prison grievances or civil lawsuits against him). "[P]risons need not require staff members who have been sued by an inmate to disqualify themselves from a disciplinary action concerning that inmate." *Id.* Davis has not presented any clear evidence of bias. The presumption that the DHO was not biased prevails.

**B. Denial of Evidence**

Davis next argues that he was denied a witness statement from an individual who told him that an officer told the individual to put soup in his cell. He alleges he was also denied: 1) documentation of his hunger strike showing he had not eaten in 12 days; 2) video showing that he was not in his cell before the soup was placed in his cell; and 3) video of his food being poisoned. Dkt. 2 at 2.

Due process requires that in prisoner disciplinary proceedings prisoners be given access to material, exculpatory evidence. *Johnson v. Brown,* 681 F.

App'x 494, 496-97 (7th Cir. 2017). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008).

The petitioner must show beyond speculation or conjecture that the evidence he was denied was material and exculpatory. *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). In this case, Davis never requested a statement from someone who told him an officer told him to put food in Davis's cell, so he was not "denied" this evidence. At screening, Davis asked for a statement from the person who put the food in his cell, saying that he did it on his own. This request was properly denied as irrelevant because the person who placed the food in the cell was not relevant to the charge against Davis. Davis also argues that he did not know who placed the food in his cell, so he did not know if it was authorized or not. Davis admitted that once he found the food in his cell, he ate it. Whether Davis knew it or not, the food did not come from staff, so it was deemed "unauthorized."

Davis's request for documentation that he had not eaten in 12 days was also properly denied as irrelevant. The sole issue is whether he accepted food that was not given to him by staff. Whether he had been on a hunger strike because he believed his food had been poisoned was not relevant to the charge.

Similarly, video evidence was reviewed from the time the food was placed in his cell to the time Davis found the food and placed it in his jumpsuit. Dkt. 12-4. Any request for video in addition to that period would exceed the time

frame that was relevant to the charge. Because Davis's requests for evidence were not relevant, he has failed to show that he was denied material, exculpatory evidence. He is not entitled to relief on this "denial of evidence" claim.

**C. Advance Notice of Charge**

Davis also contends that he was not given advance notice of the charge being changed from 113-trafficking at screening, to 215-unauthorized possession of property at the hearing. Due process requires that an inmate be given advance "written notice of the charges . . . in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. "The notice should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003) (citations and quotation marks omitted). "The notice requirement permits the accused to gather the relevant facts and prepare a defense." *Id.*

Trafficking, offense 113, is defined as:

> Giving, selling, trading, transferring, or in any other manner moving an unauthorized physical object to another person; or receiving, buying, trading, or transferring; or in any other manner moving an unauthorized physical object from another person without the prior authorization of the facility warden or designee, … .

Dkt. 12-8 at 2. Code 215, unauthorized possession of property, is defined as "[u]nauthorized possession, destruction, alteration, damage to, removal, or theft of property." *Id.* at 5.

The factual basis for the modified charge of "unauthorized possession of property" was the same as the original charge of trafficking/trading ("receiving…an unauthorized physical object"). Davis was informed that the fact that he ate the food that was placed in his cell by a non-staff member while purporting to be on a hunger strike violated prison rules. Indeed, Davis does not deny receiving the food from a non-staff member and eating it. Here, the DHO did not deny his due process rights by lessening the charge from a Class A (113) to a Class B (215) offense. *See* dkt. 12-7 at 42; dkt. 12-8 at 1-3; *Northern*, 326 F.3d at 911 ("Because the factual basis of the investigation report gave [petitioner] all the information he needed to defend against the trafficking charge, the reviewing authority's modification did not deprive [him] of his due process rights.").

## IV. CONCLUSION

There was no constitutional infirmity in the proceedings which entitles Davis to the relief he seeks. Accordingly, Davis's petition for a writ of habeas corpus must be **denied** and the action **dismissed with prejudice.** Judgment consistent with this Order shall now issue by separate entry.

**SO ORDERED.**

Date: 11/24/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

SONNY DAVIS
128888
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

David A. Arthur
INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov